UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

AMANDA SCHNORRBUSCH,            )
                                )
        Plaintiff,               )
                                )       CIVIL ACTION NO.
VS.                             )
                                )       3:18-CV-1850-G
COMMERCIAL TRADE, INC.,         )
                                )
        Defendant.              )

## MEMORANDUM OPINION AND ORDER

Before the court is the motion of the defendant, Commercial Trade, Inc. ("CTI"), to dismiss the plaintiff's complaint for failure to state a claim (docket entry 7). For the reasons discussed below, the motion is **DENIED**.

### I. BACKGROUND

#### A. Factual Background

The plaintiff, Amanda Schnorrbusch, is a natural person who resides in Texas. Complaint at 1-2 (docket entry 1). Schnorrbusch is a consumer within the meaning of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692a(3). *Id.* at 2. The defendant, Commercial Trade, Incorporated, is a California corporation with its corporate headquarters located in Bakersfield, California. *Id.* at 2. CTI is engaged in the business of collecting debts and qualifies as a debt collector as defined by the FDCPA, 15 U.S.C. § 1692a(6). *Id.* at 3.

On or about October 20, 2017, CTI sent Schnorrbusch a collection letter for a debt of $100.31.  Complaint at 3; Exhibit A of Complaint, Letter from CTI to Schnorrbusch ("Letter") at 1 (docket entry 1-1).  Schnorrbusch received the collection letter on or about the same date.  Complaint at 3.  The language "Reference: PAYNE RICHARDS & ASSOCIATES" was placed at both the top and bottom of the letter.  Letter at 1.  CTI also included the file number associated with the amount owed in the same locations.  *Id*.  Furthermore, the body of the letter provided:

> Please be advised that your unpaid account in the amount of $100.31 has been referred to this office for collection by PAYNE RICHARDS & ASSOCIATES.
>
> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid.  If you notify this office in writing within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification.  If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.
>
> As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations.  But we will not submit a negative credit report to a credit reporting agency about this credit obligation until the expiration of the time period described above.

*Id*. at 1. Additionally, the name and contact information for Ed Lewis was listed at the bottom of the letter, along with language indicating that Schnorrbusch could "pay online at: ctbpay.com." *Id*. The letter concluded with a statement about the purpose of the letter: "[t]his is an attempt to collect a debt by a debt collector and any information obtained will be used for that purpose." *Id*.

### B. Procedural History

Months after receiving the letter, on July 18, 2018, Schnorrbusch filed this suit against CTI alleging violations of FDCPA. Complaint at 1; Defendant's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Brief in Support Thereof ("Defendant's Brief") at 2 (docket entry 7). In particular, Schnorrbusch maintains that CTI's letter failed to identify the creditor to whom the subject debt was owed.[1] Complaint at 3-4. By failing to identify the creditor, Schnorrbusch alleges, CTI violated Sections 1692g, 1692e, 1692d, and 1692f of the FDCPA, which caused her injury and "damages including but not limited to, fear, stress, mental anguish, emotional stress and acute embarrassment." *Id*. at 5, 10-12.

---

[1] It is important to note that Schnorrbusch's complaint was brought as a class action on behalf of Schnorrbusch and all other persons similarly situated. *See* Complaint at 7. This court need not discuss the class action aspect of Schnorrbusch's complaint in this opinion, however, because the court granted the parties' joint motion to postpone class certification (docket entry 12) until after the court ruled on CTI's motion to dismiss. *See* Order Granting Joint Motion to Postpone Class Certification (docket entry 13).

Shortly after Schnorrbusch filed her complaint, on August 9, 2018, CTI filed a motion to dismiss Schnorrbusch's complaint for failure to state a claim. *See* Defendant's Brief. In its briefing, CTI argues that Schnorrbusch has failed to make any plausible claims under the FDCPA, because the language CTI used in its letter "sufficiently identified Payne Richards & Associates as the creditor to whom the debt is owed and [explained] the relationship between Payne Richards & Associates and [CTI]." *Id*. at 5-6. Specifically, CTI argues that when the letter is read in context and as a whole, "even the most unsophisticated consumer would know the identity of the creditor to whom the debt is owed, as well as the relationship between the creditor and the debt collector." *Id*. at 6.

Schnorrbusch filed a response to CTI's motion on August 24, 2018, in which she reiterates the basis of her claims and argues that the cases cited by CTI do not support dismissal and instead support Schnorrbusch's position. Plaintiff's Response to Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6) ("Plaintiff's Response") at 3-6 (docket entry 9). On September 7, 2018, CTI filed a reply that recapitulates its position on the motion and stresses that when the collection letter is read as a whole there is no dispute as to the identity of Schnorrbusch's creditor. Defendant's Reply Brief in Support of its Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Defendant's Reply") at 1-7 (docket entry 10). CTI's motion to dismiss is now ripe for consideration.

## II. ANALYSIS

### A. Legal Standard

#### 1. *12(b)(6) Standard*

"To survive a Rule 12(B)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007)), *cert. denied*, 552 U.S. 1182 (2008). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of the cause of action will not do." *Twombly*, 550 U.S. at 555 (citations, quotations marks, and brackets omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *In re Katrina Canal*, 495 F.3d at 205 (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). "The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id.* (quoting *Martin K. Eby Construction Company, Inc. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)) (internal quotation marks omitted).

The Supreme Court has prescribed a "two-pronged approach" to determine whether a complaint fails to state a claim under Rule 12(b)(6). See *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The court must "begin by identifying the pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. at 679. The court should then assume the veracity of any well-pleaded allegations and "determine whether they plausibly give rise to an entitlement of relief." *Id*. The plausibility principle does not convert the Rule 8(a)(2) notice pleading to a "probability requirement," but "a sheer possibility that a defendant has acted unlawfully" will not defeat a motion to dismiss. *Id*. at 678. The plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 679 (alteration in original) (quoting Federal Rule of Civil Procedure 8(a)(2)). The court, drawing on its judicial experience and common sense, must undertake the "context-specific task" of determining whether the plaintiff's allegations "nudge" her claims against the defendant "across the line from conceivable to plausible." See *id*. at 679, 683.

2. *Alleged FDCPA Violations*

"When determining compliance with the FDCPA, the Fifth Circuit has held that a court 'must evaluate any potential deception in [a collection] letter under an unsophisticated or least sophisticated consumer standard.'" *Fichtel v. Merchants' Credit Guide Co.*, No. 4:18-CV-00011, 2018 WL 3453910, at *2 (E.D. Tex. June 25, 2018), (quoting *Goswami v. American Collections Enterprise, Inc.*, 377 F.3d 488, 495 (5th Cir. 2004)), report and recommendation adopted, No. 4:18-CV-00011, 2018 WL 3438900 (E.D. Tex. July 16, 2018). The Fifth Circuit has elaborated on this standard, stating:

> We assume that the plaintiff-debtor is neither shrewd nor experienced in dealing with creditors. The least sophisticated consumer standard serves the dual purpose of protecting all consumers, including the inexperienced, the untrained and the credulous, from deceptive debt collection practices and protecting debt collectors against liability for bizarre or idiosyncratic consumer interpretations of collection materials. The unsophisticated consumer standard serves the same purposes and apparently would lead to the same results in most cases, except that it is designed to protect consumers of below average sophistication or intelligence without having the standard tied to the very last rung on the sophistication ladder.

*McMurray v. ProCollect, Inc.*, 687 F.3d 665, 669 (5th Cir. 2012) (internal quotation marks and citations omitted). The least sophisticated consumer "has rudimentary

knowledge about the financial world and is capable of making basic logical deductions and inferences." *McWilliams v. Advanced Recovery Systems, Inc.*, 108 F. Supp. 3d 456, 460 (S.D. Miss. June 5, 2015) (quoting *Wahl v. Midland Credit Management, Inc.*, 556 F.3d 643, 645 (7th Cir. 2009)) (quotation marks, citations, and brackets omitted). Nevertheless, the least sophisticated consumer standard will not "protect consumers who intentionally distort communications or make irrational claims." *Lindley v. TRS Recovery Associates, Inc.*, No. 2:12-CV-109, 2012 WL 6201175, at *2 (S.D. Tex. Dec. 12, 2012) (citing *McMurray* and *White v. Goodman*, 200 F.3d 1016, 1020 (7th Cir. 2000)).

"Overall, a 'debt collection letter must be read as a whole and in its entirety to determine if it violates the FDCPA.'" *Fichtel*, 2018 WL 3453910 at *2 (quoting *Fosen v. Weinstein & Riley, P.S.*, No. 4:12-CV-662, 2013 WL 4417526, at *2 (E.D. Tex. Aug. 14, 2013)). As for whether an alleged FDCPA violation is a question of law or fact, the Fifth Circuit has explained that:

> There are some letters that, as a matter of law, are not deceptive based on the language and placement of a disclaimer. At the other end of the spectrum, there are letters that are so deceptive and misleading as to violate the FDCPA as a matter of law, especially when they do not contain any disclaimer regarding the [debt collector's] involvement. In the middle, there are letters that include contradictory messages and therefore present closer calls.

*Id*. (quoting *Gonzalez v. Kay*, 577 F.3d 600, 606 (5th Cir. 2009)).

B. Application

1. *Alleged Violation of 15 U.S.C. § 1692g*

Section 1692g of the FDCPA provides that either within the initial communication, or within five days after the initial communication, a debt collector must provide the consumer with a written notice containing:

> **(1)** the amount of the debt;
>
> **(2)** the name of the creditor to whom the debt is owed;
>
> **(3)** a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> **(4)** a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> **(5)** a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a).

Here, Schnorrbusch claims that CTI's collection letter violated Section 1692g(a)(2) because it "failed to identify the current creditor to whom the debt was owed." Complaint at 10. Schnorrbusch admits that the letter states "[r]eference: Payne Richards & Associates" but argues that this language leaves the "least sophisticated consumer . . . in the dark as to whether or not . . . 'Payne Richards & Associates' is the current creditor or original creditor." *Id*. at 3. To support her position, Schnorrbusch points to the fact that CTI's letter never uses the terms "client" or "creditor" to refer to Payne Richards & Associates. Plaintiff's Response 3-6. Schnorrbusch also argues that CTI's letter is similar to the letter in *McGinty v. Professional Claims Bureau, Inc.*, No. 15-CV-4356, 2016 WL 6069180 (E.D. N.Y. Oct. 17, 2016). Plaintiff's Response at 4.

In response, CTI asserts that its letter was not confusing because it: (1) references Payne Richards & Associates in two inconspicuous spaces; (2) states that the debt was referred by Payne Richards & Associates; (3) identifies CTI as a debt collection agency; (4) includes an account number associated with the debt; and (5) informs the consumer that, upon request, CTI will provide the name and address of the original creditor if different than the current creditor. Defendant's Brief at 5-6; Defendant's Reply at 6. In support of its argument, CTI avers that its letter is similar to the letters in *Fichtel*, *DeLeon v. Action Collection Agency of Boston*, No. 17-CV-8899, 2018 WL 2089343 (S.D. N.Y. May 3, 3018), and *Howard v. Client Services, Inc.*, No.

17-CV-62425, 2018 U.S. Dist. LEXIS 142827 (S.D. Fla. Aug. 21, 2018).

Defendant's Brief at 3-6; Defendant's Reply at 4-6.

After reading through CTI's letter as a whole, and upon consideration of the authorities cited by both parties, this court concludes that Schnorrbusch's pleadings state a plausible claim that CTI violated 15 U.S.C. § 1692g.

First, CTI's letter does not explicitly identify Payne Richards & Associates, or any other party, as either the original or current creditor of Schnorrbusch's debt. *See* Letter at 1. Rather, CTI's letter explains that Schnorrbusch's "unpaid account in the amount of $100.31 has been referred to [CTI's] office for collection by Payne Richards & Associates." *Id*. It is this court's view that an unsophisticated consumer might not understand such a referral to mean that the party referring the debt is either the original or current creditor, especially where, as here, the consumer alleges that she never had a consumer account with the alleged creditor. *See* Complaint at 3 (alleging that Schnorrbusch "has never had any consumer account with Payne Richards & Associates.").

In fact, the referral statements within CTI's letter are similar to referral statements found within the letter in *McGinty*, where the court determined that such statements, without more, failed to identify the creditor in compliance with 15 U.S.C. § 1692g(a)(2). *McGinty*, 2016 WL 6069180 at *4. In *McGinty*, the plaintiffs received collection letters that identified the creditors through reference statements

which read "Re: ST CATHERINE OF SIENNA" and "Re: NSLIJ PHYSICIANS – DEPT OF ORTHOPEDIC SURGERY" and were placed in the upper-right hand corners of the letters. *Id*. at *1. The letters in *McGinty* also stated that the plaintiff's accounts had been "referred to [the defendant's] offices for collection" and that upon written request, the defendant would provide the plaintiffs with the name and address of their original creditors, if different from their current creditors. *Id*. After reviewing the letters, the *McGinty* court concluded that the letters did not satisfy 15 U.S.C. § 1692g(a)(2) because the reference statements failed to identify the current creditors and failed to specify the relationship between the creditors and debt collector. *Id*. at *4-*5.

Here, much as in *McGinty*, the letter in question identifies the alleged creditor through reference statements placed in the upper right-hand corner and bottom of the letter. Letter at 1. Furthermore, as in *McGinty*, CTI's letter does not explicitly identify the creditor by using the term "creditor" or "client," but instead states that the debt "has been referred to this office for collection by Payne Richards & Associates." *Id*. Due to the similarities between these cases, upon reading CTI's letter as a whole—taking into account the fact that CTI included a file number for Schnorrbusch's debt, a statement identifying CTI as a debt collector, as well as a representation that upon request CTI will identify Schnorrbusch's current creditor—this court concludes, much like the *McGinty* court, that it is plausible an

unsophisticated consumer may not be able to discern the identity of Schnorrbusch's creditor from CTI's letter.

Although CTI argues that the facts of this dispute are unlike those of *McGinty* and are instead more like the facts in *Fichtel*, *DeLeon*, and *Howard*, after reviewing these cases this court is unpersuaded. First, in *Fichtel*, the court concluded that the defendant's letter did not violate the FDCPA because the letter: "(1) included that the creditor, Illinois Emergency Medical Specialists, was [the] [d]efendant's 'client;' (2) provided information that their 'client' had applied insurance proceeds to the debt owed; and (3) stated that [the] [d]efendant was a debt collector attempting to collect a debt." *Fichtel*, 2018 WL 345910, at *4. Here, although CTI's letter stated that CTI was a debt collector attempting to collect a debt, the letter did not identify Payne Richards & Associates as a client, or even a customer. See *Lindley v. TRS Recovery Associates*, No. 2:12-CV-109, 2012 WL 6201175, at *1 (S.D. Tex. Dec. 12, 2012) (concluding that the collection letter did not violate 15 U.S.C. § 1692g(2)(a) because it identified the creditor as the defendant's customer). Because CTI's letter neither identified Payne Richards & Associates as a client or customer, nor provided an explanation of the relationship between CTI and Payne Richards & Associates other than the statement that Payne Richards & Associates referred Schnorrbusch's debt to CTI, *Fichtel*'s reasoning is inapplicable to this case.

Furthermore, in *DeLeon* the court concluded that the letter in question did not violate 15 U.S.C. § 1692g(2)(a) because the letter "not only refer[ed] to the creditor, but [did] so in a manner that identifie[d] the relationship between the debt collector . . . and the creditor." *DeLeon*, 2018 WL 2089343, at *3. In *DeLeon*, the first line of the letter stated that "[t]he above-named *creditor* has referred your account to us." *Id*. (emphasis added). Additionally, the letter in *DeLeon* not only instructed the recipient to make a check payable to "the creditor and [to] send it to our office" but also clarified that the letter was from a third-party debt collector. *Id*. Here, although CTI's letter explained that it was sent by a debt collection agency, the letter did not clearly identify Payne Richards and Associates as a creditor, nor did it clearly explain the relationship between Payne Richards and Associates and CTI. Consequently, *DeLeon*'s reasoning is unavailing for CTI.

Finally, in *Howard* the court granted summary judgment in favor of the defendant after finding that no jury could find that the letter in question did not identify the current creditor. *Howard*, 2018 U.S. Dist. LEXIS 142827 at *8-*18. In *Howard*, the letter in question used the language "Re: CHASE BANK USA, N.A." to refer to the creditor in the subject line of the letter. *Id*. at *2. Furthermore, the letter placed this reference directly above the last four digits of the plaintiff's Chase account number, her account balance, and a statement that "[t]he above account has been placed with our organization for collections." *Id*. The letter also identified the

defendant as a debt collector. *Id*. While the *Howard* court noted that when certain provisions of the letter were read in insolation they would fail to identify the creditor, the court found that when read together, "the only conclusion for the least-sophisticated consumer is that Chase was the creditor, not [the] [d]efendant." *Id*. at *17.

Here, while this court recognizes that the letter in *Howard* and CTI's letter are quite similar, this court finds that there are a couple of key differences between the two letters that render the *Howard* court's analysis inapplicable to this case. First, the letter in *Howard* referenced the last four digits of the plaintiff's account with Chase. *Id*. at *17. In discussing these numbers, the *Howard* court noted that the last four digits of a credit account "are commonly used to identify credit card accounts and the least-sophisticated consumer would recognize her account number from [her] credit card statements. . . ." *Id*. at *20. Here, although CTI argues that its letter provides an account number, the letter actually provides a file number associated with Schnorrbusch's debt. Unlike the last four digits of a credit account, the file number provided by CTI is not the type of information that would prompt an unsophisticated consumer to recall her creditor or debt, especially where—as in this case—the debtor claims she never had an account with the alleged creditor. *See* Complaint at 3.

Another important difference between the *Howard* letter and the letter at issue here is that the letter in *Howard* only named two entities in the letter, Chase and the defendant, which identified itself as a debt collector. *Howard*, U.S. Dist. LEXIS 142827 at *17. Here, unlike the letter in *Howard*[2], CTI's letter lists more than two entities. While CTI's letter names states that Payne Richards & Associates referred the debt, and that CTI is a debt collector, the letter also lists the name and phone number of Ed Lewis. Letter at 1. The addition of a third entity in CTI's letter distinguishes it from the letter in *Howard* and, in this court's view, raises the likelihood that an unsophisticated consumer, upon reading CTI's letter as a whole, could be confused as to the identity of the creditor.

Ultimately, because an unsophisticated consumer could be confused as to the identity of Schnorrbusch's creditor after reading CTI's letter as a whole, this court concludes that Schnorrbusch's pleadings state a plausible claim that CTI violated 15 U.S.C. § 1962g(a)(2). To put it simply, this court finds that Schnorrbusch's allegations in conjunction with the contents of CTI's letter nudge Schnorrbusch's claims against CTI "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 683. Accordingly, CTI's motion to dismiss Schnorrbusch's case for failure to state a claim is denied with respect to Schonrrbusch's first cause of action.

---

[2] The presence of a third name in the collection letter also distinguishes this case from *Lait v. Medical Data Systems, Inc.*, No. 1:17-CV-378-WKW, 2018 WL 1990513 (M.D. Ala. Apr. 26, 2018), which granted the defendant's motion to dismiss on otherwise similar facts.

## 2. Alleged Violation of 15 U.S.C. § 1692e

Section 1692e of the FDCPA provides that a debt collector "may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Schnorrbusch, by her second cause of action, asserts that CTI violated 15 U.S.C. § 1692e by failing to adequately identify the name of the creditor to whom Schnorrbusch's debt was owed in its letter. Complaint at 11. Specifically, Schnorrbusch alleges that by failing to identify the creditor, CTI's letter constituted a deceptive and misleading communication in violation of § 1692e.

CTI, in its briefing, does not raise any specific arguments as to this cause of action. *See generally* Defendant's Brief; Defendant's Reply. Rather, CTI alleges that when read as a whole an unsophisticated consumer would understand the identity of Schnorrbusch's creditor. Defendant's Brief at 6.

Because this court has already determined that Schnorrbusch sufficiently states a claim arising under 15 U.S.C. § 1692g(a)(2) by alleging that CTI failed to identify Schnorrbusch's current creditor, Schnorrbusch's allegations are also sufficient to state a claim against CTI arising under 15 U.S.C. § 1692e. *See McGinty*, 2016 WL 6069180, at *7. Therefore, CTI's motion to dismiss Schnorrbusch's case for failure to state a claim is denied as to her second cause of action.

### 3. *Alleged Violations of 15 U.S.C. § 1692d and 15 U.S.C. § 1692f*

Section 1692d of the FDCPA provides that a debt collector "may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Additionally, section 1692f of the FDCPA prohibits debt collectors from using any "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. By her third cause of action, Schnorrbusch alleges that CTI violated both of these sections of the FDCPA by sending her a collection letter that failed to identify the creditor to whom her debt was owed. Complaint at 12. Specifically, Schnorrbusch maintains that by failing to identify Schnorrbusch's creditor, CTI's letter was "meant to shame, embarrass, and harass [Schnorrbusch] by misrepresenting the alleged debts status" in violation of Section 1692d. *Id.* Schnorrbusch further asserts that by failing to identify her creditor, CTI's letter was an unfair and unconscionable means to attempt to collect the alleged debt. *Id*.

In its briefing, CTI does not raise any specific arguments as to either of these alleged violations of the FDCPA. *See generally*, Defendant's Brief; Defendant's Response. Rather, CTI alleges that when read as a whole an unsophisticated consumer would understand the identity of Schnorrbusch's creditor, and thus CTI did not violate any provision of the FDCPA. Defendant's Brief at 6.

Because this court has already determined that Schnorrbusch sufficiently states a claim arising under 15 U.S.C. § 1692g(a)(2) by alleging that CTI failed to identify Schnorrbusch's current creditor, this court concludes that Schnorrbusch's allegations are also sufficient to state claims against CTI arising under 15 U.S.C. § 1692d and § 1692f. Therefore, CTI's motion to dismiss Schnorrbusch's case for failure to state a claim is denied as to her third cause of action.

### III. CONCLUSION

For the reasons stated above, CTI's motion to dismiss Schnorrbusch's FDCPA claims against it is **DENIED**.

**SO ORDERED**.

December 7, 2018.

_____
**A. JOE FISH**
**Senior United States District Judge**